Doughty *agt.* Hope.

---

DOUGHTY, plaintiff in error, *agt.* HOPE, defendant in error.

## Questions discussed.

1. Whether the *report* of the *Assessors* of Estimate and Assessment for regulating and improving streets in the city of New-York, after being *confirmed by the common council,* is so *final and conclusive,* under the statute, as to preclude any inquiry into it, for error or irregularity?

2. Where the *prima facie* presumption was that *all* three of the assessors met and consulted, although only *two* of them signed the estimate and assessment, whether the defendant was at liberty to rebut that presumption by showing that, in point of *fact,* the third assessor did nothing beyond taking the oath of office?

3. Whether the fact, that the third assessor did *not* act, could be *proved* by one who did act, as well as by the one who did not?

4. Whether the publication of the *redemption notice* required to be published six weeks, twice a week, must *end prior* to the commencement of the last six months of the two years after sale?

This was an action of ejectment tried before Hon. JOHN W. EDMONDS, Circuit Judge, on the 13th day of October, 1846, to recover corner lot No. 31, on the south side of 125th street, between 3d and 4th avenues, in the city of New-York, under a corporation sale. The plaintiff offered in evidence a duly certified copy of an ordinance passed April 26th, 1836, to set curb and gutter in 125th street between 3d and 4th avenues, and which appointed Jacob L. Warner, M. D. L. Gaines, and John Secor, assessors. (2 *Rev. Laws,* 407, § 175.)

Plaintiff then called Jacob S. Warner, who was sworn, and

. 14

the copy of the ordinance and the following affidavit were shown to him :—

" *City of New-York, ss.*—We whose names are hereunto subscribed, do severally swear, that we will make the estimate and assessment directed by the above ordinance fairly and impartially, according to the best of our skill and judgment.

J. S. WARNER,  
M. D. L. GAINES, } *Assessors.*  
JOHN SECOR.

" Sworn to by J. S. Warner, M. D. L. Gaines, and John Secor, this 28th day of January, 1837, before me,

C. W. LAWRENCE."

The witness testified, I acted as assessor in making this assessment ; John Secor and M. D. L. Gaines were associated with me. These are their signatures to this affidavit, and we took the oath before C. W. Lawrence, then mayor. At the passage of this ordinance, I was assistant street commissioner. Gaines and Secor were also in the office. Gaines was first clerk, and Secor was second clerk. We adopted the principle which had been adopted. We were altogether in the street commissioner's office. There was a regular settled principle upon which assessments were made. Being shown an assessment roll, witness further stated, this is our assessment, and it was made according to the rule adopted in the office. This is the estimate of the whole expense. We divided it according to the work done opposite each piece of property. The intersections made more work and were charged more. Francis Nicholson acted as city surveyor. Said estimate was then read in evidence, as follows :

" We, the subscribers, the persons appointed by the mayor, aldermen, and commonalty of the city of New-York, in common council convened, by an ordinance passed on the twenty-sixth day of April, one thousand eight hundred and thirty-six, to make an estimate of the expense of conforming to a certain order and direction of the said common council, for setting curb and gutter in 125th street, between 3d and 4th avenues,

Doughty *agt.* Hope.

and a just and equitable assessment thereof among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion as nearly as may be to the advantage which each shall be deemed to acquire, having taken the oath required by law, which is filed in the street commissioner's office, do hereby certify to the said mayor, aldermen, and commonality, in common council convened, that we have, according to law, estimated the expense of conforming to the aforesaid order and direction of the common council, for setting curb and gutter in 125th street, between 3d and 4th avenues, at the sum of two thousand eight hundred and eighty-nine dollars and forty-eight cents, as follows, that is to say :

| | |
|---|---:|
| Contract, | $2795.54 |
| Surveying, | 65.98 |
| Advertising, | 3.00 |
| Collecting, | 24.96 |
| | $2889.48 " |

The assessment and assessment map were also read in evidence, and the lot described in the plaintiff's declaration is there assessed to Isaac Adriance by lot No. 31, on said map, for setting curb and gutter on 125th street, from 3d to 4th avenue, for $150.83, to which estimate, map and assessment, is attached a return by the assessors named in said ordinance, bearing date September, 1837, signed Francis Nicholson, surveyor, and Jacob S. Warner and M. D. L. Gaines, assessors. The witness further testified that the measurements on said assessment were made by the city surveyor. The figures of amounts of assessments are made by a clerk in the office. I can't tell in whose handwriting they are, they may be Mr. Gaines's. Lot No. 31, and the intersection, are assessed to Isaac Adriance. Lot 31 is assessed $139.74, the intersection is assessed $11.09. Lot 31 extends 90 feet on 125th street, and the intersection extends 115 feet 2¾ inches. Lot 31 is a corner lot.

Cross-examined. Question. When did you first see this assessment? This question and all questions tending to show by this witness that either of the assessors did not act with the

others, or the mode of making up the assessment, was objected to by the plaintiff's counsel; which objection was overruled by the judge, and the plaintiff's counsel excepted. The witness testified, if my name had not been signed to this assessment I should not have known that I ever saw it before, there are so many papers of this kind. Assessments have been brought to my house to be signed since I left the street commissioner's office. I can't say who fixed the principle. I found it fixed when I went into the office. We assessed a lot of 100 feet front the same, whether it was two inches or 100 feet deep. I have no recollection of having a meeting. We made no estimate of expense. The way was, that a contract was made and executed, and the amount reported to us, and we assessed it. The assessment was made in the street commissioner's office, by some one, and this by the assessors was merely nominal. They signed it after it was made out by some one in the office, without any particular examination by the assessors, when it was signed, or at any time. Witness was in the office three years prior to 1836, and was first appointed an assessor in 1834. The estimate was decided by the street committee. The way we came appointed was, there is a standing ordinance saying, that the street commissioner, assistant street commissioner, and first clerk, should be the assessors, and I was, at the time of the ordinance, acting street commissioner. I am speaking of assessments generally; I do not recollect this particular one, nor anything about this. I cannot say that Secor ever met with us, nor can I say that I ever met with any one in relation to this particular assessment. I don't recollect whether I met with any one or not. We did not go on the ground and make an assessment in this case, and I never knew of any assessment made on the ground in which we acted as assessors. The work must have been completed before any assessment could be made. The assessments for curb and gutter were made in the street commissioner's office, and our acting as assessors was merely nominal; the surveyor made the measurements. I cannot say but that I signed this assessment since I left the street commissioner's office, but I do not recollect that I did. We signed assessments in the office wherever we happened to be. I do

not know that any sectional assessment was made. The expenses of assessment are correctly stated in the estimate; there was no charge made for our fees. The common council appointed the assessors from the street commissioner's office, so that no charge should be made. To all this cross examination the plaintiff did in due time except.

Direct examination resumed.—The assessment bears date September, 1837. I was in the street commissioner's office three years before the passage of the ordinance for the assessment, and remained there till 1839. I was first appointed an assessor in 1834. Gaines and Secor were first appointed assessors with me in 1835. We all understood the principle of making assessments; we all adopted it; the principle was very simple, and did not require much consultation. The work was done at a fair price at the time; it would be a high price now. The practice was for the street committee to advertise for sealed proposals, and to give the contract to whoever offered the best terms. I was in the office acting as street commissioner at the date of the ordinance for this assessment for about three months. The common council by a general ordinance directed the street commissioner and clerks in the office to act as assessors; and I was named first in the ordinance for this assessment, because I was then the acting street commissioner. When I say the amounts were filled in by clerks, I mean clerks in the street commissioner's office, and assessors also. The ordinances always directed the work to be done under the direction of a city surveyor. I can't say that I did not have this assessment under my charge; I may have done so. I don't recollect anything about it.

Cross-examined.—I can't say that in this particular case we had any formal meeting. I do not recollect.

Question.—Is it not your impression that you never did?

This question was objected to by the plaintiff's counsel, which objection was overruled, and the plaintiff's counsel excepted.

Answer.—Founded on the custom of the office, my impression is that we did not. I don't know who made the contract; I may have made it myself; I have no recollection about it.

The plaintiff then offered in evidence a certified copy of the proceedings of the common council, whereby the assessment was confirmed on the 4th day of April, 1838, and C. S. Van Winkle appointed collector. The defendant objected to this evidence, on the ground that it did not appear that the proceedings were confirmed by calling the ayes and noes, or that they had been signed by the mayor, and that the proceedings were only a confirmation of the assessment, and not of any estimate, as the law requires. The objection was overruled and excepted to, and the evidence allowed.

The collector's warrant, issued by the mayor and four aldermen, and a list of delinquents returned by the collector, were then proved, and the oath of the collector that he had called upon the persons named in his list, (and among others, Isaac Adriance, to whom the property in question was assessed,) and their neglect and refusal to pay.

It was admitted that the lot was sold on the 20th June, 1840. The plaintiff's counsel then read in evidence the *lease* duly recorded, from the mayor, aldermen, and commonalty of the city of New-York, to the plaintiff for the term of 800 years, in which was recited the *certificate* given by the street commissioner to Doughty, the purchaser. (*Laws of* 1841, §§ 5 and 7.)

A *sale notice* was proved to have been published in the New Era, a newspaper published in the city of New-York, for fourteen weeks successively, commencing on the 14th day of March, 1840. Also a like notice published thirteen weeks successively, commencing March 12th, 1840. (*Act* 1816, *and Laws* 1840, 274, § 10.)

A *redemption notice* was then proved to have been published in the Evening Post, commencing on the 13th day of December, 1841, and was continued twice in each week successively. The last publication was made January 21, 1842. This notice the defendant's counsel objected to, on the ground that it should have been published for six weeks, that should end previous to the commencement of the last six months, before the expiration of two years after the sale of the property. The judge reserved the question and received the testimony.

A *notice to redeem* was then proved to have been served by

Leatham Teaz upon Isaac Adriance, (the owner,) on the 6th of December, 1842, and another on Thomas Hope, (the tenant,) on the 9th December, 1842.

The street commissioner's *certificate*, that the premises had not been redeemed on the 31st July, 1843, was then proved.

The counsel for the plaintiff requested the judge to charge the jury as matter of law, that the confirmation of the report of estimate and assessment in this case by the common council was binding and conclusive on the owner and occupant of the premises in question and a lien and charge thereon, and it was wholly unimportant to inquire whether any irregularities had occurred in the proceedings of the assessors in making said estimate and assessment, or whether any error had taken place in the proceedings thus confirmed.

The judge refused so to charge, and the counsel for the plaintiff excepted.

The counsel for the plaintiff requested the judge to charge the jury that it appearing in evidence that the assessors had all taken the oath and had fixed upon, or adopted the principle of making such assessment, and were all in the street commissioner's office when the assessment was made, though only two had signed the report of the assessors; it was to be presumed that Secor, who did not sign the report, met and consulted with those who did sign the report, and that such presumption could not be rebutted by any impression or non-recollection of the witness Warner, as it respects himself or any of his co-assessors.

The judge stated that he should charge that the legal presumption was that the assessors had done their duty; but refused to charge as requested in other respects. The counsel for the plaintiff again excepted.

The counsel for the plaintiff then requested the judge to charge the jury, that Warner and Gaines having signed the report was conclusive evidence that they had acted as assessors, and that Secor alone could prove that he had not met, consulted and acted with the others, and as his absence was unaccounted for, no secondary evidence could go to the jury.

Doughty *agt.* Hope.

The judge refused so to charge, and the plaintiff's counsel excepted.

The counsel for the plaintiff requested the judge to charge the jury, that the twenty-first section of the amended city charter, requiring the executive business of the corporation to be performed by distinct departments, and requiring the common council to organize and appoint such departments, was a modification of § 175 of the laws of 1813; and if the assessment and estimate had been made under the direction of the street commissioner, the same was well and legally made, and could not now be impeached.

The judge refused so to charge, and the counsel for the plaintiff again excepted.

The counsel for the plaintiff again requested the judge to charge the jury, that the redemption notice was sufficiently published, that the law of 1816 as amended by the law of 1840 was sufficiently complied with by six weeks' publication in a daily newspaper in the city of New-York, successively, twice in each week, provided such publication ended any time before the expiration of two years from the time of the sale of the premises.

The judge refused so to charge, and the plaintiff's counsel excepted.

The counsel for the plaintiff again requested the judge to charge the jury, that the publication of said redemption notice having commenced on the 13th December, 1841, and previous to the last six months of the two years after the sale of the premises, the statute was sufficiently complied with.

The judge refused so to charge, and the plaintiff's counsel excepted.

The counsel for the plaintiff again requested the judge to charge the jury that the statutes of 1816 and 1840 were directory.

The judge refused so to charge, and the plaintiff's counsel excepted.

The counsel for the plaintiff again requested the judge to charge the jury that upon the giving of the street commissioner's certificate, pursuant to the act of 1841, the lease to the

plaintiff became absolute, and the defendant and all others interested in the premises, were debarred from all right and title thereto, during the term of years for which the premises were conveyed to the plaintiff, and that, therefore, the defendant could not avail himself of any defect in the publication of the redemption notice.

The judge refused so to charge, and the counsel for the plaintiff again excepted.

The counsel for the plaintiff requested the judge to charge the jury that the lease was, by the act of 1816, conclusive evidence of the regularity of the sale; and therefore the defendant could not avail himself of any defect in the publication of the redemption notice.

The judge refused so to charge, and the counsel for the plaintiff again excepted.

The judge charged the jury, that the first question for them to pass upon was,—Was the action of the assessors in making the estimate of the expense, and assessment thereof, correct or not. The common council must obey the act of the legislature strictly. The assessors were to divide the amount of the expense, and assess the same as each was benefited. The question is, Has this assessment been made in that way?

The evidence is, that an assessment has been made. If the assessors passed upon it, then the proceeding is right. But if they have not passed upon it, then the proceeding is wrong. If they have found how much each was benefited, then their assessment is right; if they have not, the assessment is wrong.

I therefore charge, that the confirmation by the common council of the report of the assessors is not so final and conclusive as to preclude the defendant from inquiring into the report; therefore, it is here a question: 1st. Was there a proper estimate of expense? 2d. Was there a proper assessment of it among the owners benefited?

An assessment and estimate to be right, must be made by the three appointed by the ordinance; two may report if three act. The presumption is, that all three did act; but the testimony of Warner is uncontradicted, and you must pass upon that alone, and if you are satisfied that one of the assessors

Doughty *agt.* Hope.

had nothing to do with the estimate and assessment, then the assessors did not act. An estimate should be made beforehand, and involves an exercise of judgment. Did the assessors ever meet and agree upon the principles of the assessment? If they met and so agreed, the time when done is immaterial.

As to the redemption notice, it must be published for six weeks, twice a week, and which publication must end prior to the commencement of the last six months of the two years after the sale. If the jury think that it has not been so published, their verdict must be for the defendant. This involves, of course, the instruction that the certificate of the street commissioner which renders the sale absolute is not conclusive evidence of the regularity of the redemption notice.

To all, each, and every part of which charge the plaintiff's counsel then and there excepted.

The jury found a verdict for the defendant.

The supreme court (BRONSON, J., delivering the opinion) affirmed the judgment rendered at the circuit. *Reported 3 Denio*, 598.

*A. Thompson, Attorney and Counsel* for plaintiff in error.

*First.* The circuit judge erred in refusing to charge the jury as matter of law, that the confirmation of the report of estimate and assessment in this case by the common council was binding and conclusive on the owner and occupant of the premises in question, and a lien and charge thereon; and it was wholly immaterial to inquire whether any irregularities had occurred in the proceedings of the assessors in making said estimate and assessment; or whether any error had taken place in the proceedings thus confirmed; and the judge also erred in charging the jury, that the first question for them to pass upon was, was the action of the assessors in making the estimate of the expenses, and assessment thereof, correct or not; and also in charging, that the confirmation by the common council of the report of the assessors is not so final and conclusive as to preclude the defendant from inquiring into the report. The supreme court also erred in sanctioning such refusal

Doughty *agt.* Hope.

and charge of the circuit judge. (*Error Book, p.* 24, *p.* 26, *pp.* 30–32.)

Because—

·1. The statute declares that such estimate and assessment being ratified by the common council, shall be binding and conclusive upon the owners and occupants of such lots, and a lien and charge on such lots, &c. (2 *Rev. Laws, p.* 407, § 175.)

2. The request was in accordance with the decisions of the court of errors in similar cases. In opening streets three commissioners are to be appointed by the supreme court; the commissioners are to report to the supreme court, and such report, when confirmed by the supreme court, shall be final and conclusive. These powers conferred upon the supreme court are held, in 7 *Hill*, 19, to be judicial, from their nature; and this is confirmed in the court of errors. The 175th and 178th sections are in· *pari materia.* The same words must have equal force, whether in the one or the other section. The confirmation of the supreme court is conclusive by force of the statute; and in like manner the ratification of the common council is final and conclusive by force of the statute; and each and every consequence that follows in the one case by statute, also follows in the other. (2 *Rev. Laws*, 409, § 178; 2 *Rev. Laws, p.* 413; 7 *Hill*, 19; 2 *Denio*, 332.)

*Second.* The common council's jurisdiction was sufficiently proved by the passage of the ordinance to set curb and gutter. Having acquired jurisdiction, their confirmation was a final and conclusive statutory judgment, which could not be reviewed in any collateral action; and as objections could have been made to the confirmation of the report, a *certiorari* would not lie. (*7th and 8th p.; 2 Rev. Laws, p.* 407, § 175; 2 *Hill*, 20; 4 *Hill*, 89; 17 *Johns.* 468; 7 *Wend.* 83; 2 *Hill*, 27.)

*Third.* The great difference between the supreme court and the plaintiff in this case is as to the effect of the ratification of the common council. The supreme court holds the whole proceedings of the common council, the carrying out a statute power; we hold that the passage of the ordinance to do the work gives the common council jurisdiction; and the ratification of the assessors' report is as truly a statutory judgment as

the confirmation of a report of the supreme court; and consequently, such ratification is in reality final and conclusive upon the defendant, (the occupant,) and cannot be reviewed in this action for error or irregularity. (2 *R. L. p.* 460, § 315; (135, *and R.* 208;) 2 *Denio,* 332; 2 *Hill,* 27; 17 *Johns.* 468; 7 *Wendell,* 83.)

*Fourth.* The judge erred also in receiving the testimony of Warner, for the purpose of showing that either of the assessors did not act with the others, or the mode of making up the assessment. Secor should have been called, or his absence accounted for. (10*th page;* 21 *Wend.* 178; 3 *East,* 192; 2 *R. S.* 581-2, *misdemeanor.*)

The judge also erred in refusing to charge, that it appearing in evidence that the assessors had all taken the oath, and had fixed upon or adopted the principle when the assessment was made, though only two had signed the report of the assessors, it was to be presumed that Secor, who did not sign the report, met and consulted with those who did sign the report, and that such presumption could not be rebutted by any impression or non-recollection of the witness Warner, as it respects himself or any of his co-assessors. The supreme court have mistaken the testimony. (24*th page;* 7 *Cowen,* 556, *see note;* 21 *Wend.* 211; 23 *Wend.* 327; 2 *R. S.* 555, § 27; 17 *Johns.* 468; 9 *Wend.* 17; 21 *Wend.* 183; 8*th,* 11*th, and* 30*th pages.*)

The judge also erred in refusing to charge, that Warner and Gaines having signed the report, was conclusive evidence that they had acted as assessors, and that Secor alone could prove that he had not met, consulted or acted with the others, and as his absence was unaccounted for, no secondary evidence could go to the jury. (21 *Wend.* 184, 185; 3 *East,* 192.)

The judge also erred in charging the jury, that the testimony of Warner was uncontradicted, and they must pass upon that alone; and if they were satisfied that one of the assessors had nothing to do with the estimate and assessment, then the assessors did not act. (26*th page;* 1 *Term Rep.* 300; 4 *Burr,* 2224; 1 *W. Bla.* 366; 1 *Dick.* 389.)

*Fifth.* The judge erred in charging, that the redemption notice must be published for six weeks, twice a week, and which

Doughty *agt.* Hope.

publication must end prior to the commencement of the last six months of the two years after the sale. (26*th page ;* 2 *R. L. p.* 442, § 259; *L. of* 1816, *p.* 114, § 2; *L. of* 1840, *p.* 274, § 10.)

The judge also erred in refusing to charge, that the publication of said redemption notice having commenced on the 13th December, 1841, and previous to the last six months of the two years after the sale of the premises, the statute was sufficiently complied with. (25*th page ;* 1 *R. S.* 2*d ed. p.* 399, §§ 76–80; *L. of* 1823, *pp.* 405, 406, § 43; 10 *Wend.* 397; 9 *D. and R.* 772; 3 *Clark and Fin.* 354.)

The judge also erred in refusing to charge, that the statutes of 1816 and 1840 were directory. (25*th page ;* 7 *Wend.* 83, *and cases cited ;* 6° *Hill,* 646; 1 *Burr,* 447; 1 *Burr,* 330; 5 *Cow.* 469; 2 *Mass.* 230; *Dwarris on Stat.* 713–716; 2 *Binney,* 227; 11 *Wend.* 604; 2 *Denio,* 160; 17 *Johns.* 167.)

The case of 18 Johns, 441, is provided for by laws of 1816, pp. 12 and 13.

*Sixth.* The judge also erred in refusing to charge, that upon the giving of the street commissioner's certificate, pursuant to the act of 1841, the lease to the plaintiff became absolute, and the defendant, and all others interested in the premises, were debarred from all right and title thereto, during the term of years for which the premises were conveyed to the plaintiff; and that therefore the defendant could not avail himself of any defect in the redemption notice. (25*th page ;* 1 *R. S.* 400, 2*d ed.* § 84–90; *Laws of* 1841, *p.* 211, § 7.)

*Seventh.* The supreme court erred in confirming all the proceedings at the trial, and refusing a new trial.

☞ 3 Denio, 167—Statute says, shall be *final and conclusive*—that distinguishes from authorities on which court relied—Differs from Brooklyn and Williamsburgh charters. ☜

☞ REPLY. First, jurisdiction—then statute—judgment as to all intermediate matters conclusive—those things must be done, but confirmation conclusive—4 *Hill* right—but not applied to New-York. ☜

*Richard Mott, Attorney and Counsel* for defendant in error.

The evidence in the case shows, that three persons were ap-

pointed by the common council to make an estimate of the expense of the improvement, and to assess the same among the owners, &c.

The evidence of Warner shows, that no *estimate* whatever of the expense was ever made by the assessors, or any or either of them.

That the assessors never had any meeting, nor were they ever together for the purpose of making a distribution or assessment of the expense among the owners or occupants of the houses and lots benefited by the improvement.

That the whole was done by a surveyor and a clerk in the street commissioner's office.

That only two of the assessors signed the assessment, and that without ever examining it.

The evidence also is, that the sale was on the 20th day of June, 1840, and the first publication of the redemption notice required by the statute of 1816, p. 114, § 2, and the statute of 1840, p. 274, § 10, was on the 13th day of December, 1841, and the last was on the 21st day of January, 1842.

*First.* The statute of 1813 (2 *R. Laws*, 407, § 175) requires the assessors to make an *estimate* of the probable costs and expense of the improvement, directed by the ordinance of the common council, before the contract is made or the work done; and that to be confirmed by the common council. And not being done in this matter, the assessment, and all subsequent proceedings, are void. (*Elmendorf* v. *The Mayor, &c.,* 25 *Wend.* 696.)

*Second.* The assessment and all subsequent proceedings are void, for the reason that the assessment was not made by the *three* assessors. And also, that the assessors had never met or conferred together upon the subject. (2 *R. S.* 555, § 27; *Ex parte Rogers,* 7 *Cowen,* 526; *Babcock* v. *Lamb,* 1 *Cowen,* 238; *Crocker* v. *Crane,* 21 *Wend.* 211.)

The contract was made by the *street committee,* and that amount was distributed among the owners of the adjoining property by a clerk in the street commissioner's office without consulting the assessors, and the confirmation of the report did

Doughty *agt.* Hope.

not preclude the defendant from going behind it. (1 *East*, 70, 71; 4 *Hill*, 599.)

*Third*. The redemption notice was not published according to the statutes, the sale being on the 20th day of June, 1840. The first publication should have been on or before the 7th day of November, 1841, and to continue once a week for six weeks successively. This would have brought the whole publication within the first eighteen months, as the statutes require. The statute of 1816, (114, § 2,) and the statute of 1840, (274, § 10,) declare that the " mayor, aldermen, and commonalty of the city of New-York, *shall*, at least six months before the expiration of two years after any such sale, *cause* an advertisement to be published in one daily newspaper, printed and published in the city of New-York, at *least* twice in each week for six weeks successively." The last six months of the two years after the sale in this case commenced on the 20th day of December, 1841, and the first publication of the redemption notice being on the 13th day of December, 1841, it was published only seven days previous to the commencement of the six months before the expiration of two years after the sale, instead of forty-two days, as it should have been; (1 *Wend.* 90;) and for this reason the plaintiff's title failed. (*Striker* v. *Kelley,* 7 *Hill,* 1.)

*Fourth*. The above statutes are in derogation of common right, and should be construed strictly. (7 *Wheat.* 119; 7 *Wend.* 151; 4 *Hill,* 86; 7 *id.* 1; 13 *Serg. & Rawl.* 208; 2 *Hammond,* 231; *id.* 365; *Striker* v. *Kelley,* 2 *Denio,* 330.)

*Fifth*. The circuit judge was right in his direction to the jury, and the questions of fact were fairly submitted to the jury, and they having passed upon those facts in favor of the defendant, their verdict is conclusive.

*Sixth*. The lease of the corporation to the plaintiff is void for the above reasons, and conveys no title to the premises in question to the plaintiff.

R. MOTT, *Attorney and Counsel for Defendant.*

DECISION.—Judgment affirmed, adopting the opinion of the supreme court as reported 3 *Denio,* 598.

GARDINER, J., dissenting.

NOTE.—*Held*, that under the statute (2 *R. L.* 407, § 175) it is not the *ratification* by the common council which is binding and conclusive, but the *estimate* and *assessment* when ratified.   And it is only when an assessment has been *first duly made*, that the common council has the *power of ratification.    Void* things are as *no* things.

But if that act was good so far as it goes, it would only be one of several necessary links in the plaintiff's claims of title, and it is a well-established rule in relation to these statute powers to transfer the title to land without the consent of the owner, that the authority must be strictly pursued from beginning to end; if any material link in the chain be wanting, the whole proceeding will fall to the ground.

The *prima facie* presumption in this case was, that all of the assessors met and consulted, although only two of them signed the estimate and assessment. But the defendant was at liberty to rebut that presumption by showing that in point of fact the third assessor did nothing beyond taking the oath of office.

And the fact that the third assessor did not act might as well be *proved* by one who did act as by one who did not.

The jury having found that only two of the assessors acted, and that the third was not consulted, and there being nothing to obviate this difficulty, it is fatal to the proceedings.

The *ratification* by the common council has not the force of a *judgment* of a *court of record.*

Also, *held*, that the circuit judge was right in holding that the six weeks' publication (redemption notice) should have been completed *before* the commencement of the last six months of the two years after the sale, which is allowed for redeeming.

*Reported 1 Comstock*, 79.